, counsel for appellant, if you would make your appearance and proceed, please. Good morning, and may it please the court. My name is Rochelle Anderson, and I represent the defendant appellant September 2. Your honors, the law requires that before a law enforcement officer places his hands on an individual, he must have a constitutionally adequate and a reasonable grounds for doing so. The Fourth Amendment does not allow for an individual seizure based on what neighborhood he's in, based on guilt by association, and not based on reverse engineered reasonable suspicion. In this case, the district court's factual findings that the officers had a strong suspicion of Mr. Htoo's identity before his seizure and before his detention is internally inconsistent and irreconcilable with the district court's acknowledgement that these officers, during the suppression hearing, exaggerated and overstated their confidence level in Mr. Htoo's identity. Well, that's a credibility question. That's the district court judge gets to decide how credible and how incredible their testimony is, right? The district court does, yes, your honor. Okay. And then the court did, in fact, rely on, to some extent, on their testimony, right? The court decided it would believe their testimony. Your honor, the district court did, and that's where the error comes into play. But in any event, that's the point. How does the error come into play? And what I would want to focus on is this. Why is it inconsistent to say that you're credible and yet have questioned whether you, in fact, could have seen X, Y, and Z? In other words, you're mistaken about certain things. What I see the district court saying here is that the officers are credible, but they had hindsight bias. In other words, looking backward, they sort of had a certainty that they really didn't have at the time. That doesn't mean they're lying. It just means that they're mistaken. It just means that they – and so the court could say you're credible. I accept what I deem to be the facts out of that, but I don't credit everything you said. Why isn't that exactly what the district court did here? And what's wrong with that? Your honor, that's not the evidence that we have in this record. I would submit that when you have reasonable suspicion, which under Terry v. Ohio talks about the district court being able to make rational inferences based on facts, that can establish reasonable suspicion. But when you have the officers who are testifying to those facts from which the district court is supposed to draw reasonable inferences, having credibility issues – and I know the court said perhaps the district court and this court had just indicated that these officers suffered from hindsight bias. Well, that's not what the district court necessarily found, your honor. The district court had indicated that the officers were overconfident in their decisions, or in their recognition of Mr. Tu. That's exactly what the court said. And you can, if you want to, scrap my language of hindsight bias, but the point is still the same. The court said they were overconfident. But it didn't say they were lying, did it? Do you deny that the court found them credible? Your honor, I do think that to a certain extent the court found them credible. The court said, I don't necessarily equate the officers' possible overstatements as outright lies, but that conflicts with the rest of the record. When the officers testified to a certainty that they recognized Mr. Tu, and the district court can look at that through a lens and say, and this court can look at that through a lens during its de novo review, but there's only one way to read the officer's testimony and to read the district court's concerns with the officer's testimony, and that's that these officers were not credible at the suppression hearing. But the problem is the other facts are not even in dispute, are they? That he was walking with Lee, right? That's correct. And I'm a little bit concerned that you're trying to look at all these facts in isolation. You know, obviously you can walk with Mr. Lee if you want to, and it's not, the police shouldn't be searching you because of it, but he was walking with Lee. Nobody disagrees with that. He took off running. Nobody disagrees with that. I mean, you have a little spin on that. You're saying, well, he wasn't running at the time they caught up to him, but I mean, he did take off running. He split from Mr. Lee. He was in a high crime area. He was in rival gang area. The officers testified there's a weapon imprint. I mean, you have no evidence that that's not true. I mean, how do you, those facts are undisputed. So you can say, okay, look, they didn't know who Tu was. That was bogus. But this other stuff doesn't rely on credibility. It's all undisputed. Your Honor, I respectfully disagree. When it comes to the weapon printing, absolutely that's a disputed fact. What's the evidence that they were wrong on that? Your Honor, it's not corroborated in the lapel videos, and I'm sure the Court is familiar with watching lots of lapel videos, and typically if an officer sees a lapel, I'm sorry, during a lapel recording, if an officer sees a suspect and suspects that that person is armed, it's not uncommon for that officer to radio that information into dispatch to relay it to another officer. Is that in the record? If we look at the transcript, did counsel argue, Your Honor, I've got someone prepared to testify that in these cases, when they see a weapon imprint, they're going to call it into dispatch? No, Your Honor, but that's an inference that this Court can make during its de novo review. I mean, I guess we could, but don't we look and see if the district court's inference was reasonable? Isn't that what our inquiry is? Yes, and this Court should find that the district court's inference with regards to these facts is not a rational one when it's based on testimony that is called into question and that can only be read as not being credible on this record. Quite often, instructions are given to juries and juries are held to find or we recognize that juries can view one part of a witness's testimony as credible and disregard the rest. I mean, that happens all the time. Courts instruct juries that there's nothing wrong with that. And so, if that's the case, why can't a district court do the same thing? Why can't the district court say, I think it's credible that there was an imprint on him. I think this witness overall was credible. They were mistaken about this other stuff. What is wrong with that? And it's not whether the Court was reasonable. It's whether you can show it was clearly erroneous to say that there was an imprint of a gun. Right? Correct. Okay. Help me with that clearly erroneousness then. Your Honor, and that clearly erroneous part comes back to the fact that these officers' testimony was not credible, which leads me to the first part of your question.  There's no blanket credibility or non-credibility. That's what I'm saying right now. It's credible as to the imprint. Your Honor, and I would respectfully disagree about the imprint because it's not corroborated, again, in the lapel video. It's not included in the reports. The first time that the firearm is mentioned in one of the officers' reports is post-detention. And at that point in time, I would submit that the detention is unlawful and that observation of the firearm in that instance is not a lawful one. But I want to go back to the Court's question about why should the district court treat these officers' testimony different than a jury should treat any other layman's person's testimony and can pick and choose. Well, Your Honor, the important question is, with regard to these witnesses, these are professional law enforcement witnesses who we have given the authority and the power to conduct detentions. And the Fourth Amendment requires that those detentions be based on reasonable suspicion. And the exclusionary rule exists to protect individuals and folks in our society from unlawful detentions. And in this case, when they're testimony, we cannot treat these officers as just, you know, lay witnesses where we can pick and choose. And pause a minute. What authority do you have for the proposition we can't? What authority do you have for the proposition there is some heightened standard that applies to a law enforcement witness? There isn't any. If you have some, tell me now, because there isn't any. Your Honor, I don't have any authority directly on point. But that's the purpose of the exclusionary rule, I would submit, is that when you have an officer who takes the stand and is testifying before a district court, and that district court finds components of their testimony to be incredible and questions the veracity of their testimony. Mistaken, overly certain. That is not incredible. If you have an officer who is in a blowing storm, and that officer believes, I believe I saw that car go through. And all these facts come in, and the court says, you know, I accept they believe it. I think they're credible. They're not lying to me. But I just can't make the judgment that they actually saw the car. Well, that doesn't mean that they are liars. It doesn't mean they're incredible. And so in this exact situation, the court said, well, you know, based upon what the record shows, I can't really say that they were as certain as they were, but there was a strong suspicion that they had. What is wrong with that? That happens all the time. It is a sorting mechanism that a court does in determining what are the facts and what aren't the facts. Unless you can show that there's anywhere in that opinion or otherwise where the court said these people are incredible, i.e., the officers lie, and in fact the court said the exact opposite, then why can't the court pick and choose? Your Honor, I think that having internal inconsistencies within the district court's record is what creates the problem and what makes this case unique. For example, in the district court's oral findings at the evidentiary hearing, the district court stated, I kind of agree with Mr. Stewart, who was defense counsel, that I really don't think Officer Nikam knew who it was all along, referring to Mr. Tu. That contradicts squarely Officer Nikam's testimony that he knew. That sounds equivocal to me. I mean, you do have to agree. There's not a finding, I don't believe the officer. You agree with that? Your Honor, it's not an explicit finding, and that's the district court's mistake. I mean, what concerns me is I view, I think we've got a district court here who's somewhat, and also there was no explicit finding that they didn't recognize Tu, right? I'm sorry, can the court repeat its question? There was no explicit finding by the district court that the officers didn't recognize Tu. That's correct. Right. I mean, the court was not convinced by the testimony, but he was also not convinced they were lying. He was not convinced that they were not credible witnesses. He just chose to put the problematic things aside and go to the things that weren't disputed. I think I agree with that assessment. Go ahead. No, you go ahead. And you agree that there, do you agree there are two alternative ways to go at this? I mean, a lot of the argument you're talking about relates to the question of whether you rest reasonable suspicion on the fact that they knew it was Tu and they knew he had warrants. The other alternative is whether based upon the totality of the circumstances apart from whether they knew it was Tu, that they had reasonable suspicion. That's right. That's correct. Okay. Well, with that said, you reference, and I'm not sure I get the exact word, but there are disputed facts or there are contested facts. Well, is it in dispute that they were in a high crime area? No, Your Honor. Okay. Is it in dispute that at least one of the people was a gang member? I think specifically Mr. Shi was a gang member. Okay. That's not in dispute. Is it in dispute that he fled from the police, Mr. Tu? Yes, Your Honor. Okay. It is in dispute? Your Honor, I do dispute the characterization of the running away from officers. And how so? Did he run? Your Honor, I think there was a potential amount of time, maybe 10 to 20 seconds, that officers indicated that he was running. But it's important to note that this is not the type of headlong flight. I'm not talking about their acceleration or how fast they ran. I'm saying did they move away when they saw the officers? Your Honor, they turned down an alley. They walked down an alley. It was when the officers turned around that at that point in time, I believe the testimony is they no longer saw Defendant Shi Li, but they continued to see Mr. Tu, and Mr. Tu was running, correct? Mr. Tu was running, and they testified Mr. Tu was running. Correct. And the court found that he was running? Yes, Your Honor, for a very short amount of time. Okay. Short or long, he was running, right? Okay. So, undisputed, he was running for a short period of time. And on the outline, on the weapon, we already talked about that. And I understand that you view that as being disputed. But what is your best, I guess I already know, but I guess you have to show that it's clearly erroneous, right? Yes, Your Honor. And I think that we get to the clearly erroneous, and I want to try to reserve a certain amount of time for rebuttal. It gets to clearly erroneous because under Mapp v. Ohio, and I keep coming back to this because this is the crux of the argument, is that if the district court is going to pick and choose testimony that it finds overall, and I'd submit that these officers' testimony was not credible, and the court made implicit and explicit findings with regards to the veracity of their testimony, that it is an error to rely on that testimony for the imprinting of the firearm under the totality of the circumstances. What did they need for the stop? Wasn't it just reasonable suspicion? Yes, Your Honor. So, I mean, even though the court said they got more confident as they proceeded in this case, even if they hadn't gotten more confident, but they had said what they did originally, we think we knew who 2 was, wouldn't that have been enough to stop him for a reasonable suspicion? Terry, stop? Your Honor, I don't believe so, and I'm 15 seconds if I can continue responding to the court's question. All right. You can take that up in rebuttal if you wish. Thank you, Your Honor. I'll reserve the remainder of my time. Thank you. May it please the court, good morning. I'm Kyle Brenton on behalf of the United States. Two gang unit officers saw two men in gang territory walking on high alert with their heads on a swivel. They positively recognized one as a member of a rival gang without standing warrants. Let me just ask you a question about the head swivel and the high alert. Absolutely. I mean, this may be the first time I've seen a case where someone looking around and acting like they're paying attention to their surroundings has been put into the reasonable suspicion analysis. Do you have some authority you can direct me to on that particular factor? Well, Your Honor, I think certainly the conduct that Officer Nickham testified to does not rise to the level of nervousness that some of this court's cases look to. But I think that what made him suspicious with regard to their behavior, which is what he testified to, is first of all, he knows these two guys. Well, he knows for certain at least one of these two guys is a member of the Asian Boys Gang. A different gang than the neighborhood in which they were found. Absolutely, Your Honor. He knows that this location had been territory of the Asian Boys Gang until very recently when it changed hands to become territory of the Chinatown Runners. And what is the significance in the reasonable suspicion calculus of the court's reference to them being in rival gang territory? The court doesn't elaborate on that, and I don't see much elaboration in the briefing. So tell me, what should I make of that? What does that tell me as it relates to the increased likelihood that they were engaged in criminal activities? Well, Your Honor, I think what is significant about that, and if you go back to Officer Nickham's testimony at the hearing, his concern was that it was not just these two guys. That there would have been a car. There are references to, I was worried that there was a car, that there would have been other members of the gang, that them going into this territory that was no longer their territory raised the possibility that there was some sort of concerted, potentially violent gang action going on. I think that's what's supported by the hearing testimony. I agree the district court does not elaborate beyond rival gang territory, though that's a factor that's been noted in a few cases as we cite in our brief. Just that rival gang territory fact. Okay, well the district court does not elaborate in this statement about I believed or I worried there were cars. I mean, that's not objective indicia of anything, is it? That's speculation. I mean, we defer to officers' experience, but we don't allow them to just hallucinate what they think is going on, right? No, Your Honor, and to be clear, this was their testimony about what they were worried about. It was their testimony about what aroused their suspicion. But that, what they might have been worried about the way you've argued it, isn't criminal behavior. I mean, being in a rival neighborhood isn't criminal behavior at all. So if that was why the officers attributed their nervousness to that fact, isn't that make the nervousness innocuous here? Because it wasn't I'm nervous because I'm going to commit a crime. I'm just simply nervous because I'm in a place I shouldn't be. Well, Your Honor, I think that you're correct that obviously just being in, being physically present in rival gang territory is not itself criminal activity. No, and it would make a gang member not in that, that didn't belong to that group nervous, wouldn't you think? I think it certainly would. There's no illegality to that at all. So can you draw any inference of illegality from their nervousness? I think that many of the factors that the court considers in the reasonable suspicion analysis are not themselves criminal. Absolutely. Presence in a high crime area. But it would be abnormal not to be nervous if you were a gang member in a territory that you no longer control. I mean, but there's nothing illegal about that at all. But I think it's also abnormal for a member of a rival gang to be knowingly present in the rival territory. And that is something that officers may take into consideration as one component of whether they have reasonable suspicion. Now, obviously, there was considerably more here, as the court has discussed. Would you say that the prime fact for these officers is that they recognized Li Shi? I think that is certainly what aroused their suspicion initially, and that as they testified they had a strong suspicion or had some recognition of two as well. Yes, because these specific officers were very well versed in these gangs and this area. Should we just throw out the idea that they recognized two because the district court gave it no credence? Well, I don't think that so. I think your question to my opposing counsel, Your Honor, you know, should we just set aside the identity issue because everything else is sufficient, as the district court found? That is absolutely a way that this case can be resolved. I think that association with Li, presence in rival gang territory, imprint of a gun, and headlong flight in opposite directions, those things are sufficient. I think that, you know, ultimately, if the court wanted to disregard the identity issue, I mean, I think what did the district court find? They had a strong suspicion. A reasonable officer would have had a strong suspicion based on knowing what these officers knew. And that was not clear. So in your opinion, I mean, do you read the district court, I mean, this would be strong disagreement with your opposing counsel, who I don't think reads it this way, but would you read the district court's colloquy as saying, look, I don't think you could definitively identify two. I don't think you recognized him for sure. But I think you may have thought it was him. Is that how you read it? I think fundamentally that that essentially is how I read it. Yes, Your Honor. The finding is they had a strong suspicion that the man they were detaining was two and that he had outstanding warrants. And that comes from the very end. And they could detain a person on that basis alone, could they not? Absolutely, Your Honor. I think if you look at the Supreme Court's decision in Hensley and in Hill v. California, those are two. Hill is a mistaken identity in an arrest. Hensley is whether you can have reasonable suspicion to stop someone that they may be subject to a warrant. You don't need probable cause. You don't need that high a suspicion. Absolutely not, Your Honor. I think reasonable suspicion that this person is subject to an outstanding warrant that is supported by specific articulable facts and that is a good faith belief on the part of the officers, all of that is present here. So I think that, and as we argue in our brief, the strong suspicion finding, even setting aside the level of certainty, which the district court obviously had some questions about in terms of hindsight, as Judge Holmes raised, but the strong suspicion finding standing alone is sufficient to justify the stop to determine whether he in fact was. You get the stop, then you see the bolt. And currently nobody is really making a big dispute about that. And everything kind of tumbles after that.  And, I mean, obviously the testimony was they saw the imprinting before even the video started, and the district court accepted that. But the moment to his stops, he immediately volunteers, I have a gun. But based upon your earlier colloquy with Judge Carson, I mean, we don't even have to go down the road of the strong suspicion finding or anything of that sort, right? I mean, it's just based on the totality of the circumstances, whether they recognize it or not, it would be your contention there's enough. Absolutely, Your Honor. Yes. If I may, let me just ask, I was curious by the district court's citation to United States v. Maddox. It looks inapposite to me. What does it have to do with this case? I mean, United States v. Maddox turned on detaining while you had some third party that you were trying to conduct, let's see, what was it? Do a protective detention of. What does that have to do with this case? I mean, I do think that Maddox is, it's a factually complex case, and it's pretty far afield of the facts here. I think that what is significant for Maddox is that where there is a legitimate concern for officer safety, there is some leeway to detain. And I think that's where the district court is talking about this. And there's ample evidence from the record that there was a legitimate officer safety concern here. They know that Lee is, at this point, in the winds. You can hear Officer Nickham radioing over and over on the video information about Lee. Officer Wikiser testified that he was concerned that, I mean, they were concerned they could be ambushed because their attention is on two and Lee is they don't know where. So I think to the, Maddox, and much of Maddox does turn on that officer safety concern. Obviously, though, as I say, a very different case factually. So I don't know how significant it is ultimately for this court's opinion. But I do think that, you know, even if we completely set aside the identity issue, which did give the district court some difficulty, though it made the strong suspicion finding, which was not clear error, we can still resolve this case entirely based on the other reasonable suspicion factors. Or, as Judge Ebell suggests, just based on the suspicion, which is enough to detain to determine if he had warrants. So if there are no further questions, I will ask the court to affirm. Thank you. One minute. Your Honor, I want to assist the court if it's going to conduct de novo review and consider the totality of the circumstances with specific regards to whether or not or how much weight the court should consider this rival gang issue. In the transcript volume, which I believe is Volume 3 at 52 through 53, those page numbers, the first officer, Officer Weisker, testifies that Asian boys and the Chinatown Runners, quote, often associate with each other, even though they're rival gangs, and that they have crossed membership, our affiliation. So this isn't the situation in these officers' mind or in the minds of a true rival gang territory in light of that testimony in this officer's training and experience with these gangs. I also want to talk about Hill v. California and the fact that an officer does not have to be certain in an individual's identity to execute it. And I see I'm over time. If I could just finish my thought. Finish your thought. Thank you, Judge. An officer doesn't have to be certain of an identity in order to effectuate an arrest on a warrant he believes is outstanding, but he does have to be operating in good faith. And I think that this record demonstrates that these officers were not operating in good faith. Thank you. Case is submitted. Thank you, counsel, for your arguments. And as I noted, we'll take a short 10-minute break. Thank you. Thank you.